Filed 5/29/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JONATHAN OWENS,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>CITY OF OAKLAND HOUSING, RESIDENTIAL RENT and RELOCATION BOARD,<br><br>     Defendant and Respondent.<br><br>LAUREN BARGHOUT et al.,<br><br>     Real Parties in Interest | A157663<br><br>(Alameda County Super. Ct. No. RG18914638) |

When the owner of a single-family home rents bedrooms in the home to separate tenants, does the Costa-Hawkins Rental Housing Act (Costa-Hawkins, or the Act, Civil Code §1954.50 et seq.)[1] exempt each of the tenants' rooms from local rent control because the home is considered an exempt dwelling under the Act? Jonathan Owens rented out bedrooms in his home to three unrelated individuals. He contends the City of Oakland's Housing, Residential Rent and Relocation Board (the Rent Board) and the trial court erred when they determined the rented rooms are subject to Oakland's rent

---

[1] Further statutory citations are to the Civil Code.

1

control ordinance.  We agree with the Rent Board and the court and affirm the trial court order denying Owens's petition for writ of mandamus.

## BACKGROUND

Owens owns and resides in a single-family home in Oakland.  He rented individual rooms in the home to three unrelated tenants.

In May 2016, tenant Lauren Barghout filed a petition pursuant to Oakland's Rent Adjustment Program alleging her housing became unsuitable due to disruptive construction work and hazardous conditions on the premises.  Barghout further alleged Owens failed to provide required notice of the Rent Adjustment Program and retaliated against her by terminating her lease when she complained about the construction work and sought a reduction in rent.  Owens responded that Barghout's rental was exempt from Oakland's Rent Adjustment Ordinance (the Ordinance) as a single-family home, and he denied her factual allegations.

The Rent Board set an administrative hearing for August 25, 2016.  On August 3, Owens filed an unlawful detainer complaint against Barghout, to terminate her tenancy of "the premises located at 3420 Rubin Drive, Room A: NW Master Bedroom, including bathroom & fenced patio & 3420 Rubin Drive, Room B: Downstairs Home Office, Oakland, California**."**  Barghout's lease, which Owens attached to the complaint, described the rented premises similarly and identified Barghout as a housemate with "sole use of one or more rooms and shared use of common areas (such as kitchen) in the residence."  The tenancy was month to month subject to 60 days' notice to quit after one year.

At the hearing, Owens argued that Barghout's rental was not subject to the Ordinance because the rooms she rented were in a single-family home that was " 'alienable, separate from the title of any other dwelling unit' " and,

2

therefore, exempt under the Costa-Hawkins Act from local rent control provisions. " [T]herefore, the Rent Board does not have jurisdiction over any disputes related to . . . the rent."

The hearing officer disagreed. "Civil Code Section 1954.52 (Costa-Hawkins) provides that, under certain circumstances, a single-family home is exempt from local rent regulations. However, in this case, the owner has chosen to rent rooms out separately to a number of people, thereby transforming a single-unit dwelling into a multi-unit dwelling. That portion of the house rented to the tenant is therefore not exempt from the Rent Adjustment Ordinance." But the hearing officer also found Barghout was in arrears in rent without any justification and dismissed her petition on those grounds.

Owens appealed to the Rent Board, arguing the hearing officer erroneously determined the property was not exempt from local rent control under the Costa-Hawkins exemption for single-family homes.[2] The Rent Adjustment Program unanimously affirmed the hearing officer's decision.

Owens filed a petition for writ of administrative mandamus in the superior court to challenge the Rent Board's determination. The petition asserted he was "deprived of his rights to an exemption from rent control under the Costa-Hawkins Rental Housing Act when the RAP [Rent Adjustment Program] decided his renting rooms in a single-family home transformed his home into a multi-unit dwelling."

The trial court disagreed. "At issue is the question of law whether [Owens'] four-bedroom single-family detached home is exempt from the rent control ordinance under the Costa-Hawkins Act because it is 'alienable []

_____

[2] Barghout also appealed to the Rent Board, but dropped her appeal as part of a settlement with Owens and has not participated in the subsequent proceedings in the trial court and this court.

3

separate from the title to any other dwelling unit' . . . and that he may rent those bedrooms to individual tenants without complying with the RAP.

"The meaning of a 'dwelling unit' under building and planning codes is not in pari materia with the meaning under rent control ordinances. For purposes of landlord-tenant law, 'a dwelling or a unit' or a 'dwelling unit' is not the entire property to which an owner holds title; rather, it is any area understood to be committed [] to the habitation of a given tenant or tenants to the exclusion of others. (See, e.g., Civ. Code § 1940(a) [defining 'dwelling unit' as 'a structure or part of a structure that is used as a home, residence, or sleeping place by one person who maintains [] a household or by two or more persons who maintain a common household' for purposes of a landlord-tenant statute]; see also, e.g., Oakland Mun. Code § 8.22.020 [defining 'Covered Unit' as including 'all [non-exempt] housing services located in Oakland and used or occupied in consideration of payment of rent'].)

"The relevant dwelling unit in question is not Owens's home but rather each of the rooms he rented to tenants. Those units are not exempt from rent control as a condominium or single [] family home. (Civ. Code §1954.52(a)(3)(A).)"

Owens filed this timely appeal from the judgment denying his petition for administrative writ of mandate.

## DISCUSSION

Owens contends the plain language of the Act unconditionally exempts all single-family homes from local rent control "including individual bedrooms rented to separate tenants." The City argues the exemption does not apply to the rooms Barghout rented in Owens' home because the Act exempts only dwellings or units that are alienable separate from the title to any other dwelling or unit. We review this question of statutory construction

4

independently. (*T&A Drolapas & Sons, LP v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (2015) 238 Cal.App.4th 646, 651 (*T&A Drolapas*).)

"In interpreting the statutory language at issue, '[w]e begin with the fundamental rule that our primary task is to determine the lawmakers' intent." (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082 (*MacIsaac*).) "In the first step of the interpretive process we look to the words of the statute themselves. [Citations.] The Legislature's chosen language is the most reliable indicator of its intent because ' "it is the language of the statute itself that has successfully braved the legislative gauntlet." ' [Citation.] We give the words of the statute 'a plain and commonsense meaning' unless the statute specifically defines the words to give them a special meaning. [Citations.] If the statutory language is clear and unambiguous, our task is at an end, for there is no need for judicial construction. [Citations.] In such a case, there is nothing for the court to interpret or construe. [Citation.]

"Nevertheless, the 'plain meaning' rule does not prevent a court from determining whether the literal meaning of the statute comports with its purpose. [Citations.] Thus, although the words used by the Legislature are the most useful guide to its intent, we do not view the language of the statute in isolation. [Citation.] Rather, we construe the words of the statute in context, keeping in mind the statutory purpose. [Citation.] We will not follow the plain meaning of the statute 'when to do so would 'frustrate[ ] the manifest purposes of the legislation as a whole or [lead] to absurd results." ' [Citation.] Instead, we will ' "interpret legislation reasonably and . . . attempt to give effect to the apparent purpose of the statute.' " (*MacIsaac, supra,* 134 Cal.App.4th at pp. 1082-1083.) It is

only when the statutory language does not resolve the question that we look to our rules of construction and legislative history for clarification. (*Id.* at pp. 1083-1084.)

Applying these principles here, we conclude the statutory language answers the question and was correctly interpreted by the trial court.

Section 1954.52 states: "Notwithstanding any other provision of law, an owner of residential real property may establish the initial and all subsequent rental rates for a dwelling or a unit about which any of the following is true: . . . It is alienable separate from the title to any other dwelling unit. . . ." (§ 1954.52, subdivision (a)(3)(A).)

Owens argues section 1954.52, subdivision (a)(3)(A) exempts the rooms he rents within his home from Oakland's rent ordinance because the home, in its entirety, is a "dwelling or a unit" that is "alienable separate from the title to any other dwelling unit." In other words, as long as the structure is a single family residence, and it is alienable apart from any other structure because it has its own title and can be sold separately, no areas that are within that structure, even if they are separately rented to third parties, are subject to local rent control.

The problem with Owens' position is that the plain language of the statute focuses on the rent set for the "dwelling" or "unit". The relevant question is instead whether the "dwelling" or "unit" separately rented by Barghout and for which Owens claims the right to establish the amount of rent, was itself separately alienable from the title to any other dwelling or unit. (§1954.52(a)(3)(A); see also §1940, subd.(c) [defining "dwelling unit" for purposes of landlord-tenant law as "a structure or the part of a structure that is used as a home, residence, or sleeping place. . . ."].) Owens makes no claim that Barghout's unit was separately titled or could be separately alienated

6

from the rest of his house.  Nor does he argue that a plain reading of the statute would lead to an absurd result.  (See *MacIsaac, supra,* 134 Cal.App.4th at p. 1083.)

Accordingly, the trial court correctly determined the dwelling units Owens rented to individual tenants "are not exempt from rent control as a condominium [] or single family home.  (§1954.52(a)(3)(A).)"

Because the statutory language compels this result, we will not consider legislative history or provisions of the Building Code and Oakland Planning Code that Owens asserts support his contrary view.[3]  Owens' reliance on a general statement in a real estate treatise is also uninformative. The passage he relies on merely recognizes that "[t]he definition of 'separately alienable' is somewhat technical . . . , but *most* single family detached dwellings on separate lots not containing a second dwelling unit, single-family condominium units and other single-family attached dwellings that may be legally conveyed as separately subdivided interest in a common interest development will qualify for the exemption, once they have actually been sold into separate ownership."  (10 Miller and Starr, *California Real Estate,* 4th ed. 2019 update, §34:246, italics added.)  This passage says nothing about whether the Act applies to dwellings or units rented by an owner to third parties that are *not* separately alienable.  We have no authority to extend the Costa-Hawkins exemption for dwellings or units that

---

[3] We therefore deny Owens' October 1, 2019 request for judicial notice. "Although a court may judicially notice a variety of matters . . . , only relevant material may be noticed.  'But judicial notice, since it is a substitute for proof [citation], is always confined to those matters which are relevant to the issue at hand.' " (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063, italics omitted.)  The City's December 20, 2019 request for judicial notice of the entirety of the unlawful detainer complaint and exhibits incorporated therein is granted.

are separately alienable to those that are not. " ' " 'Appellate courts may not rewrite unambiguous statutes' " or 'rewrite the clear language of [a] statute to broaden the statute's application.' " (*In re I.A.* (2019) 40 Cal.App.5th 19, 23.)

Owens argues for the first time in his reply brief that, while he concededly "had separate agreements with [his tenants] that each had their own rooms within the single-family house," Barghout in fact "was renting and sharing" the entire home. Other than to observe that the trial court's contrary factual findings are supported by the record, we will not address this contention. "A party may not raise an issue for the first time on appeal [citation], and points raised for the first time in a reply brief on appeal will not be considered, absent good cause for failure to present them earlier." (*Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 583.)

## DISPOSITION

The judgment is affirmed.

_____
Siggins, P.J.

WE CONCUR:


_____
Fujisaki, J.


_____
Petrou, J.

*Owens v. City of Oakland*, A157663

9

Trial Court:                                        Alameda County Superior
                                                    Court


Trial Judge:                                        Hon. Frank Roesch


Counsel:

Clifford E. Fried, Jonathan Madison, Fried & Williams, LLP for Appellant.

June Babiracki Barlow, Jenny Yichieh Li, Neil D. Kalin, California Association of Realtors as Amicus Curiae for Appellant.

Barbara J. Parker, City Attorney, Maria Bee, Chief Assistant City Attorney, Jamilah A. Jefferson, Special Counsel, Ubaldo Fernandez, Deputy City Attorney for Respondent.